## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **NORTH CYPRESS MEDICAL CENTER** | § | |
| **OPERATING COMPANY, LTD.,** | § | |
| **NORTH CYPRESS MEDICAL CENTER** | § | |
| **OPERATING COMPANY GP, LLC,** | § | |
| **BETTY FAYE KOSLEY and** | § | |
| **DAVID BRADLEY WILBANKS** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:14-cv-02248** |
| | § | |
| **CONOCOPHILLIPS, INCORPORATED** | § | |

## CONOCOPHILLIP'S ORIGINAL COUNTERCLAIM

ConocoPhillips Company (improperly named ConocoPhillips Incorporated) ("ConocoPhillips Co.") and ConocoPhillips Medical and Dental Assistance Plan (improperly named ConocoPhillips Employee Medical Benefit Plan) (the "COP Plan")[1] file this Original Counterclaim ("Counterclaim") against North Cypress Medical Center Operating Company, Ltd. ("North Cypress, Ltd.") and North Cypress Medical Center Operating Company GP, LLC ("North Cypress GP") (collectively the "Counter-Defendants"),[2] and would respectfully show the Court as follows:

## I.
### INTRODUCTION

1.      This is a fraudulent medical billing and illegal "kick-back" case. North Cypress is a 139-bed community hospital with publicly reported annual gross revenues that exceed $1.5 *billion* dollars a year – an amount that is more than twice that of other nearby hospitals that have substantially more patient volume and provide a wider array of medical services than North

---

[1]   ConocoPhillips Co. and the COP Plan are referred to collectively herein as "ConocoPhillips."

[2]   North Cypress, Ltd. and North Cypress GP are referred to collectively herein as "North Cypress."

Cypress. North Cypress' extraordinary revenues, which make it an extreme outlier in the healthcare industry, were not achieved by creating a higher quality and more efficient hospital facility, but rather, through a fraudulent billing and "kick-back" scheme that was masterminded by Dr. Robert Behar—North Cypress' Chief Executive Officer (CEO) and Chairman of the Board.

2.     The scheme includes paying illegal "kick-backs" to physicians in exchange for patient referrals disguised as ownership interests in North Cypress, charging grossly excessive fees, implementing improper billing techniques, and forgiving members' financial responsibility (*i.e.*, deductibles, co-pays, and co-insurance), in order to make the scheme work. Absent this, COP Plan members would not knowingly be treated at North Cypress and agree to pay much higher out of pocket amounts required under the terms of the COP Plan, which is self-funded, when they could get the same services at a fraction of the cost at in-network hospitals within close proximity of North Cypress.

3.     Dr. Behar uses his "Physician Vital Statistics," which he calls his "sacred reports," to track the volume and value of each physician's referrals to North Cypress. Lots of referrals result in Dr. Behar allowing the physician to not only become an owner in North Cypress, but also increase his/her ownership interest in North Cypress over time. Physicians owners who do not refer enough patients, according to Dr. Behar, are not allowed to invest further in North Cypress and, in fact, are typically squeezed out of their ownership interest in North Cypress.

4.     With regard to the COP Plan members, North Cypress is a "non-participating" or "out-of-network" medical facility, meaning that it has no contract with Aetna Life Insurance Company ("Aetna"), which provides claims administrative services to the COP Plan and allows the members ready access to its provider network. North Cypress would not be able to submit

such exorbitant fee requests if it were contracted as an in-network hospital.  As described herein, Dr. Behar orchestrated an "out-of-network" business strategy employing fraudulent billing practices and a scheme which caused Aetna, on behalf of ConocoPhillips, to overpay North Cypress millions of dollars since North Cypress opened its doors in January 2007.

5.     By engaging in the actions described herein, and reaping the rewards of its outrageous fees, North Cypress is able to advertise that its facility has "an upscale 5-star hotel-like ambience."  More importantly, the physicians who own North Cypress (including Dr. Behar) have profited hundreds of millions of dollars at the expense of payors, including ConocoPhillips, and ultimately the COP Plan members in the long run.  This scheme includes referring patients to North Cypress, rather than in-network hospitals, for the purpose of lining the pockets of the physician owners.

6.     The damages sought in this case pertain to facility fees and related fees charged by and paid to North Cypress.  In essence, through the fraudulent billing and "kick-back" scheme effectuated by Dr. Behar (and by others at the specific direction of Dr. Behar), North Cypress has gouged ConocoPhillips and the COP Plan members for millions of dollars for the use of the brick, mortar, and equipment at its facility.  Separately, and not part of the damages sought in this Counterclaim, the physicians are paid for their services provided at North Cypress.  That said, because of the inherent conflict of interest involved in a physician referring patients to a facility in which the physician has an ownership interest, strict and complete disclosure to patients is mandated as a matter of ethics and law.  North Cypress, however, has fallen well short of its disclosure obligations.

7.     Effective January 1, 2012, as the plan administrator and sponsor, ConocoPhillips Co. amended the COP Plan to exclude North Cypress as a covered medical facility for any

treatment that was not a true emergency.  ConocoPhillips Co. did this to stop North Cypress from continuing to gouge the COP Plan, ConocoPhillips Co., and its employees.  North Cypress subsequently sued ConocoPhillips in retaliation for amending the COP Plan.  In its Second Amended Complaint (Docket No. 21), North Cypress seeks, among other things, a judicial declaration that it "did not engage in any acts of fraud or misrepresentation" in its "attempts to recover healthcare benefits from [the COP Plan] at any time."  ConocoPhillips' Counterclaims, however, will establish that North Cypress did, in fact, engage in acts of fraud, misrepresentation, and other illegal and wrongful conduct for which ConocoPhillips has suffered significant damages.

8.      ConocoPhillips asserts Counterclaims for common law fraud, money had and received, unjust enrichment, tortious interference, breach of contract, and alternative equitable relief under the Employee Retirement Income Security Act ("ERISA") for injuries it suffered as a result of the fraudulent billing scheme that Dr. Behar designed and implemented.  Aetna also seeks injunctive relief requiring North Cypress to fully notify and apprise all COP Plan members when the physicians who have referred the members to North Cypress have an ownership interest in North Cypress.  Additionally, this Court should enjoin North Cypress from engaging in its billing scheme, including charging unreasonable fees and waiving patient responsibility, as detailed herein.

## II.
## PARTIES

9.      Counter-Plaintiff ConocoPhillips Company is a corporation organized under the laws of the State of Delaware with its principal place of business in the State of Texas. ConocoPhillips Co. has already appeared in this action.

HOU:3546275.1

10.     Counter-Plaintiff ConocoPhillips Medical and Dental Assistance Plan is an ERISA employee welfare benefit plan, which has already appeared in this action.

11.     Counter-Defendant North Cypress Medical Center Operating Company, Ltd. is a Texas limited partnership and regularly conducts business in Cypress, Harris County, Texas. North Cypress Ltd. has already appeared in this action.

12.     Counter-Defendant North Cypress Medical Center Operating Company GP, LLC, which is the general partner of North Cypress Ltd., is a Texas limited liability company and regularly conducts business in Cypress, Harris County, Texas.  North Cypress GP has already appeared in this action.

### III.
### JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the Constitution, laws, or treaties of the United States.

14.     Venue is proper in the Southern District of Texas pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b)(1) because North Cypress resides or may be found in this judicial district, and pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to the claims occurred here.

### IV.
### FACTUAL BACKGROUND

**A.     The COP Plan And In-Network Benefits From Participating Providers**

15.     The COP Plan provides in-network health care benefits to its members through a network of "participating" medical providers who have entered into contracts with Aetna to render services to members in return for fees at contract rates.  Medical providers who enter into contracts with Aetna are commonly known as participating providers, and the contracts between Aetna and participating providers require the participating provider to accept in-network rates for

services as payment in full.  A COP Plan member ordinarily has no financial obligation to the participating provider beyond a small, fixed copayment, or coinsurance, and the participating provider is contractually prohibited from billing the member for any other amounts (*i.e.*, balanced billing), except under limited circumstances.

16.     The COP Plan encourages its patient/members to utilize participating providers, an arrangement beneficial to both the participating providers, who enjoy increased patient traffic or steerage, and the patient/members who receive appropriate, high-quality health care services at a fair and reasonable cost.  Plan provisions that require the member to pay coinsurance, deductibles and other portions of a hospital's charges for services encourage the member to be sensitive to health care costs and utilize hospitals with lower fees, which makes medical insurance less expensive.

**B.     The COP Plan And Out-of-Network Benefits From Non-Participating Providers**

17.     The COP Plan also provides out-of-network benefits for services rendered to its members by non-participating providers, which have not entered into contracts with Aetna and have not agreed to accept in-network rates as payment in full for their services.  Non-participating providers set their own fees for services rendered to their patients subject to the laws and regulations which govern the practice of medicine in Texas.  Due to the sheer volume of healthcare claims, and to help alleviate the administrative burdens related to claims processing, many healthcare plans (including the COP Plan), have reimbursed out-of-network benefits based upon a percentage of billed charges.  This payment methodology presumes that out-of-network providers submit honest, reasonable and customary charges, for their medical services in accordance with applicable law.  Under this methodology, however, egregious billing providers, such as North Cypress, have taken advantage of the healthcare system by charging exorbitant amounts – far in excess of reasonable and customary rates – knowing full well that the

higher they charge, the more they can pocket, at least until its overall referral scheme was discovered.

18.     Health benefit plans, like the COP Plan, that cover services by non-participating providers may limit the benefits available for out-of-network services and require members to contribute a much larger amount of the cost of care rendered by non-participating providers (*i.e.*, higher co-pays, co-insurance, and deductibles).  North Cypress and Dr. Behar know that most patients would not agree to pay the larger amount for out-of-network services that they would be responsible for under the terms of their health benefit plans.  Thus, few if any rational cost-conscious patients in a non-emergent situation would agree to have out-of-network services performed at North Cypress if it was going to cost them more.  So, North Cypress and Dr. Behar devised a misleading "prompt pay discount" sometimes referred to as the "Access NCMC program."  Simply put, North Cypress tells the patients that they will only have to pay the same amount as if the services were performed at an in-network hospital.  But, North Cypress does not treat the hospitalization as in-network when it bills for its services. To the contrary, it gouges payors like ConocoPhillips with outrageous rates dwarfing the amounts it would be paid as an in-network provider.

## C.     North Cypress' "Out-of-Network" Strategy

19.     As a non-participating medical facility, North Cypress' has implemented an "out-of-network" strategy to target and siphon off high-value patients who would otherwise receive medical services from in-network facilities at discounted rates.  The target patients include the COP Plan members who are provided ready access to out-of-network benefits for services rendered by non-participating providers, such as North Cypress.  In furtherance of its "out-of-network" strategy, North Cypress has employed various underhanded schemes and practices, which are described below, to overbill and be overpaid for medical services provided to the COP

Plan members.   This suit is ConocoPhillips' effort to obtain reimbursement for those overpayments.

### i.      North Cypress' Excessive Billed Charges

20.     North Cypress has billed for both outpatient and inpatient medical services at rates that grossly exceed the usual, customary and reasonable fees in the same market area. North Cypress' billed charges are greatly in excess of those other comparable hospitals charge for the same medical services.   North Cypress has overcharged ConocoPhillips for routine procedures/treatment, such as $66,410 for hernia repair, $72,646 for two days of treatment for morbid obesity, and $60,457 for treatment of dehydration.   North Cypress' charge for a simple urine pregnancy test is nearly five times the amount charged by other providers in the relevant market.   Its charges for CT scans and routine blood work, such as a basic metabolic panel, are similarly marked up.

21.     As part of its scheme to hide what it is really doing, North Cypress has submitted claims for medical services rendered to COP Plan members using non-specific billing codes, including procedure code "A," totaling more than $6 million since 2009.   And, North Cypress has billed excessive fees for "emergency" care, including services provided at its emergency room or its freestanding emergency centers.

22.     In addition to medical services and diagnostic testing, North Cypress has billed for surgical supplies and implants under revenue code 278 at prices that far exceed its out-of-pocket costs for those items.   Moreover, North Cypress has billed for injections (*e.g.*, insulin, chemotherapy, etc.) provided to COP Plan members at amounts that are more than ten times – and sometimes nearly 100 times – what other similar hospitals charge for the same injections. North Cypress' egregious billed charges are motivated purely by greed and are in no way justified by higher costs, better quality of care, or greater patient acuity.

23.     North Cypress' excessive billed charges are also attributed to its fraudulent "upcoding" of medical claims submitted to Aetna and other payors.  When medical providers, like North Cypress, submit their medical bills for payment, they identify their medical services using Current Procedural Terminology ("CPT") Codes.  "Upcoding" occurs when a provider fraudulently bills for medical services using higher CPT Codes than actually performed, resulting in higher reimbursement to which the provider is not entitled.  North Cypress regularly engages in "upcoding" practices in its emergency room and other departments to further line its coffers.

24.     As a medical provider, North Cypress is required to bill for emergency care services using CPT Evaluation & Management ("E&M") Codes 99281-99285.  Providers are required to bill emergency room E&M Codes based upon the level of patient acuity.  CPT E&M Code 99281 represents the lowest patient acuity; whereas, CPT E&M Code 99285 reflects the highest patient acuity.  For example, if a patient presents at the emergency room with flu-like symptoms, the provider should bill using a lower CPT E&M Code than for a patient who presents with severe chest pains or serious injuries following an automobile accident.

25.     More importantly, medical claims submitted with higher CPT E&M Codes (*i.e.*, 99284 and 99285) typically result in higher reimbursement than claims submitted with lower CPT E&M Codes.  To further game the healthcare system and maximize reimbursement at the expense of payors like ConocoPhillips, North Cypress improperly bills its emergency room services using higher CPT E&M Codes, even though the patients' acuity levels require that such services be billed using the lower CPT E&M Codes.  In fact, during a North Cypress Finance Committee meeting, Dr. Behar and other executives at North Cypress concluded that "[p]atients need to be scored at a 4-5 before being admitted through the ER otherwise reimbursement is

low."  In other words, North Cypress fraudulently bills its emergency room services using CPT E&M Codes 99284 and 99285, regardless of the patients' acuity level.

26.     By way of further example, North Cypress performs Intensity Modulated Radiation Therapy (IMRT), which is a form of radiotherapy used to treat cancer patients.  IMRT aims small beams of radiation of varying intensities at a malignant tumor from many angles, conforming to the shape of the tumor, and sparing surrounding tissue.  Image Guided Radiation Therapy (IGRT) is a more sophisticated form of radiotherapy that takes IMRT one step further and enables more precise alignment of the radiation beam to the tumor.  On information and belief, after learning that North Cypress could receive higher reimbursement for IGRT (as opposed to non-guided IMRT), Dr. Behar, who is a practicing oncologist, instructed others at North Cypress to code and bill for non-guided IMPT procedures as if the patient were treated with IGRT.  By doing so, North Cypress has fraudulently overbilled for services that it did not perform, or alternatively performed services that were unnecessary solely to obtain a higher reimbursement for North Cypress and its physician owners.

27.     North Cypress' practice of overbilling is strategic and no accident.  Tellingly, the gross revenues (*i.e.*, total billed charges) of other nearby hospitals pale in comparison to North Cypress, even though such hospitals have more inpatient bed capacity and higher patient utilization.  For example, in 2012, North Cypress had gross revenues that were $320 million *more than* those of Memorial Herman Memorial City Medical Center, even though Memorial Herman had three times the number of patient beds, more than twice as many inpatient admissions, and more outpatients than North Cypress.  Similarly, North Cypress had gross revenues that were $540 million *more than* those of Methodist Willowbrook Hospital, even though Methodist Willowbrook had nearly twice as many patient beds and in-patient admissions.

28.     Significantly, according to the COP Plan's terms, many of the medical claims at issue in this Counterclaim were reimbursed at 75% of North Cypress' billed charges.  Indeed, North Cypress knew that its excessive fees (in some cases, more than *13 times* of what Medicare allows for the same medical services) might place a "bull's-eye" on its back with payors like ConocoPhillips.  Nevertheless, driven solely by avarice, Dr. Behar issued numerous "directives" to "jack up" North Cypress' already excessive billed charges, knowing full well that any increase in those charges would directly translate to increased collections due to the "high mix" of claims that are paid based upon a percentage of billed charges, and as a result of North Cypress's failure to collect from its patients the increased costs for using an out of network hospital.

29.     Excessive billed charges, however, are only part of North Cypress' "out-of-network" strategy.  Non-participating providers, such as North Cypress, do not experience the patient traffic that an in-network provider receives in exchange for accepting discounted rates as full payment.  To account for the lack of patient volume, Dr. Behar and others at North Cypress devised a fraudulent scheme to substantially increase patient flow, while at the same time, North Cypress remained an out-of-network provider that charged (and was paid) excessive fees for its medical services (*i.e.*, so that North Cypress can "have its cake and eat it too").

30.     As discussed in more detail below, this elaborate scheme to increase patient volume consists of three primary components:  (1) physicians who refer patients to North Cypress in exchange for certain financial incentives or "kick-backs" in the form of ownership interests in North Cypress; (2) the waiver of patient responsibility to entice patients to use North Cypress instead of an in-network facility; and (3) the improper use of the emergency room and "observation" status to not only generate more fees, but also, avoid the transfer of patients to in-network facilities upon admission.

HOU:3546275.1

### ii.    North Cypress' Patient Referral "Kick-Backs"

31.    For North Cypress' "out-of-network" strategy to work, physicians must be willing to refer their patients to North Cypress.  Many, if not all, of North Cypress' owners are physicians and only those physicians who have demonstrated a significant number of patient referrals are allowed to initially invest, and continue investing, in North Cypress.  Simply put, in exchange for patient referrals, physicians receive a "kick-back" in the form of an exclusive option to invest in North Cypress, which allows them to become millionaires virtually overnight.  In fact, Dr. Behar advised the physician investors in early 2007 that investing in North Cypress was a "financial opportunity of a lifetime," and that because North Cypress' extensive fixed costs had already been paid off, any referrals to North Cypress would result in "straight profit" that would go directly into the pockets of the referring physicians.

32.    Since North Cypress opened its doors in January 2007, it has distributed hundreds of millions of dollars to its physician investors.  For example, Dr. Mirtha Casimir, who along with Dr. Behar was one of the founders of North Cypress, invested $350,000 in North Cypress and, in less than five years, earned over $9 million in distributions (*i.e.*, more than 2500% return on her investment).  During that same time span, on information and belief, Dr. Behar made over $25 million, which he uses to fund his private 10-passenger airplane and lavish life style.

33.    Once physicians are admitted into North Cypress' exclusive ownership "club," Dr. Behar exerts substantial pressure on them to continue referring their patients to North Cypress or else face dire consequences.  As noted above, North Cypress regularly prepares reports entitled "Physician Vital Statistics," which Dr. Behar calls his "sacred" reports, to track the volume of patients (and resulting billed charges) for each referring-physician investor.  These reports identify the "top producers" of patient referrals, as well as those physicians who are "not pulling their end."  Dr. Behar uses these reports to target certain physicians, including other members of

-12-

North Cypress' Board of Managers such as Dr. Michael Barnard, for not referring enough patients to North Cypress. Those physicians who do not refer patients (or a sufficient number of patients) to North Cypress are reprimanded, threatened, and even forced by Dr. Behar to relinquish their ownership interest in North Cypress, despite the fact that North Cypress' limited partnership agreement expressly prohibits such conduct. Dr. Behar's ruthless tactics to "strong arm" patient referrals, which include overt threats and intimidation, are essential to North Cypress' ability to increase patient volume as an "out-of-network" provider and generate maximum revenues in light of its excessive fees.

### iii.   North Cypress' Illegal Waiver of Patient Financial Responsibility

34.     Patient referrals, however, are only half of the equation. For North Cypress to carry out its illicit "out-of-network" scheme, it also needs patients who are willing to seek treatment at North Cypress, as opposed to an in-network facility at lesser cost to them. A COP Plan member's utilization of an "out-of-network" hospital, rather than a "participating" or "in-network" hospital, results in higher out-of-pocket costs to the member. Yet, to entice the COP Plan members (and members of other health benefit plans) to use its out-of-network facility, North Cypress has implemented a deceptively entitled "prompt pay discount" program, under which North Cypress bills members only for the amounts of patient financial responsibility that they would otherwise owe had they received treatment from an in-network facility. By entering into these illegal "side deals" with patients to reduce or waive their out-of-pocket costs as an inducement to choose North Cypress over available and reputable, in-network facilities, North Cypress interferes with the health care benefit plans between the patients and the plan sponsor(s) (including the COP Plan), violates Texas law, and reaps substantial windfalls.

35.     Moreover, by collecting only the in-network amount of patient responsibility, North Cypress breached its written representations contained in every UB-04 form used to obtain

payment, "that the beneficiary's cost share has not been waived by consent or failure to exercise generally accepted billing and collection efforts."  To the contrary, waiving patient financial responsibility is exactly what North Cypress does as a matter of course.  In fact, Dr. Behar drafted a "script" for his staff to use to advise patients that they would only be responsible for the amount of their copayment, deductible, and co-insurance had they gone to an in-network provider.  Of course, however, when submitting bills to Aetna and other payors, North Cypress does not offer the payors any type of "discount," but rather, seeks payment of the entire inflated charges.

36.     Further, by waiving, reducing, or otherwise collecting only the in-network amount of patient responsibility, North Cypress breached its Participating Facility Agreement with MultiPlan, Inc. under which ConocoPhillips is an intended third-party beneficiary.  Under the Participating Facility Agreement, North Cypress was required to bill and collect from the COP Plan members all applicable patient financial responsibility for out-of-network services as specified in the COP Plan, not just the in-network portion.

### iv.     North Cypress' Fraudulent "Emergency Room" Billing Practices

37.     In addition to patient referral "kick-backs" and the illegal waiver of patient responsibility, North Cypress has engaged in other fraudulent acts to increase its patient volume, including Dr. Behar's self-proclaimed "Out of Network Emergency Room Based Strategy," under which North Cypress improperly admits non-emergent patients through its emergency room.  Rather than directly admitting patients with pre-scheduled, elective procedures, Dr. Behar issued a "directive" requiring *all* patients (both emergent *and* non-emergent) to be admitted through North Cypress' emergency room, even if there are beds available for a direct admission.[3]

---

[3]  The only exceptions to this "directive" are Medicare patients and members in healthcare plans administered by Blue Cross Blue Shield, which has an in-network agreement with North Cypress.

By doing so, not only did North Cypress receive more reimbursement than if the patients were directly admitted, but also avoided having to contact Aetna to seek authorization for admission of the COP Plan members, at which time Aetna could have either denied North Cypress' requests for in-patient admissions and/or sought to have the patients transferred to a nearby in-network facility for many elective procedures.

38.     In addition, to alleviate the financial drain on the COP Plan caused by North Cypress' egregious billed charges and improper billing practices, ConocoPhillips Co. amended the COP Plan (effective January 1, 2012) to exclude from coverage all non-emergent medical services at North Cypress.  On information and belief, however, in an effort to undermine the COP Plan exclusion and further line its pockets, North Cypress has admitted COP Plan members through its emergency room, who were not suffering from any emergent medical condition.

### *v.     North Cypress' Fraudulent "Observation" Billing Practices*

39.     Another way North Cypress has managed to increase its patient volume is to bill for unwarranted and unnecessary "observation" care.  North Cypress routinely "observes" patients for several days without formally admitting them for inpatient treatment.  If a COP Plan member was admitted, of course, then North Cypress would have to contact Aetna for prior authorization, and Aetna would have the option of having a participating hospital provide the services if the patient could be safely transferred.  Moreover, North Cypress charges for "observation" care ranged from $201/hour to almost $230/hour – more than three times the market average.  As a result, North Cypress has billed Aetna up to $20 million to "observe" patients since 2009, including COP Plan members.

40.     Simply put, Dr. Behar concocted a fraudulent billing scheme using North Cypress to gouge the health care system, ConocoPhillips, and the COP Plan members out of tens of millions of dollars.  North Cypress' billing practices are examples of greed over need and its

-15-

abuse must be stopped.   ConocoPhillips brings this action under state and federal law for the

disgorgement of these excessive fees and for other damages, as set forth more particularly herein.

ConocoPhillips also seeks declaratory and injunctive relief concerning North Cypress' wrongful

billing practices.

**D.     Violations of Texas Statutory Law**

41.     North Cypress has violated numerous Texas statutory laws concerning the billing

practices of medical providers providing treatment and services in the State of Texas.   These

violations are pertinent to the causes of action ConocoPhillips asserts in this Counterclaim.

### *i.     Violations of Texas Occupations Code § 101.203*

42.     Section 101.203 of the Texas Occupations Code mandates that "[a] health care

professional may not violate Section 311.0025, Health and Safety Code."   Section 311.0025(a)

consists of the following prohibition:

> (a) A hospital, treatment facility, mental health facility, or health care
> professional may not submit to a patient or a third party payor a bill for a
> treatment that the hospital, facility, or professional knows was not provided or
> knows was improper, unreasonable, or medically or clinically unnecessary.

43.     North Cypress, at Dr. Behar's direction, submitted charges for medical treatment

that it knew were improper or unreasonable and violated § 101.203.

44.     Furthermore, North Cypress treats patients pursuant to a set pattern of seeking

patients based upon their financial viability and reimbursement potential, rather than any

determination of patient need.

### *ii.     Violations of Texas Insurance Code § 1204.055*

45.     Section 1204.055 of the Texas Insurance Code mandates that "[a] physician or

other health care provider may not waive a deductible or copayment by the acceptance of an

assignment."    To implement its "out-of-network" strategy, however, North Cypress, at Dr.

Behar's direction, routinely waives patients' financial responsibility in exchange for accepting the patients' assignment of benefits in violation of Section 1204.055.  North Cypress then bills Aetna inflated amounts that fail to reveal that the patients' share has been waived and/or the amounts that North Cypress will not seek to collect from the patients.  Such conduct is fraudulent, or at a minimum, materially misleading, and has caused Aetna, on behalf of ConocoPhillips, to pay more than what is otherwise required under the terms of the COP Plan.

### iii.    Violations of Texas Occupations Code § 101.201

46.    Texas Occupations Code § 101.201 bars North Cypress from "represent[ing] that patient deductibles or copayments may be waived or are not applicable to health care services to be provided if the deductibles or copayments are required" on the grounds that such representations are "[f]alse, misleading, or deceptive advertising."  The COP Plan requires to pay their share of the reasonable charges for covered expenses in the form of deductible, copayments, and other patient responsibility, including coinsurance, and North Cypress routinely violates Texas Occupations Code § 101.201 when it waives such member costs under its so-called "prompt pay discount" program.

### iv.    Violations of Texas Occupations Code § 102.001 & § 102.006

47.    Section 102.001 of the Texas Occupation Code provides that "[a] person commits an offense if the person knowingly offers to pay or agrees to accept . . . any remuneration . . . to or from another for securing or soliciting a patient or patronage for or from a person licensed, certified, or registered by a state health care regulatory agency."  North Cypress, at Dr. Behar's direction, entered into agreements with physicians or practice groups pursuant to which North Cypress provided exclusive investment opportunities in exchange for the physicians or practice groups referring their patients to North Cypress.  North Cypress' remuneration-for-referral arrangements are part of its fraudulent scheme because North Cypress is able to increase its

-17-

patient flow by incentivizing in-network physicians to send their patients to North Cypress.  This arrangement violates Texas law prohibiting any remuneration for the referral of patients.

48.     In addition, Section 102.006 of the Texas Occupation Code provides that "[a] person commits an offense if . . . the person . . . accepts remuneration to secure or solicit a patient or patronage for a person licensed, certified, or registered by a state health care regulatory agency; and . . . does not, at the time of initial contact and at the time of referral, disclose to the patient . . . that the person will receive . . . remuneration for securing or soliciting the patient." Neither North Cypress nor the physicians disclosed this remuneration-for-referral arrangement to ConocoPhillips or Aetna when North Cypress submitted its healthcare reimbursement claims, or to COP Plan members before the medical services were provided, thereby violating Section 102.006, even assuming that the remuneration-for-referral arrangements were lawful.

### v.     Violations of Texas Insurance Code § 552.003

49.     Section 552.003 of the Texas Insurance Code addresses a medical provider's wrongful charging of different prices for the same product or service provided to patients with differing medical coverage.  A medical provider, such as North Cypress, violates Section 552.003 when it intentionally or knowingly charges two different prices for providing the same product or service, where the higher price is based on the fact that an insurer will pay all or part of the price of the product or service.

50.     North Cypress has violated Texas Insurance Code § 552.003 by seeking inflated reimbursements for treatment and services rendered to the COP Plan members that were not reasonable simply because the members had medical coverage through the COP Plan.  Upon information and belief, North Cypress does not routinely seek similar charges for similar services provided to uninsured or underinsured patients, or when submitting claims to Medicare.

### v.    Violations of Texas Health & Safety Code § 324.101

51.     Section 324.101 of the Texas Health and Safety Code requires hospitals to "develop, implement, and enforce written policies for the billing of facility health care services and supplies" so that consumers can be informed fully about how much they can expect to pay, can receive an itemized bill for the services they are receiving, and can know whether their providers are in-network or out-of-network.

52.     Upon information and belief, North Cypress has violated Texas Health and Safety Code § 324.101 by failing to, among other things (i) develop, implement, and/or enforce any such written policies regarding its billing practices, (ii) provide conspicuous written disclosures to COP Plan members confirming whether North Cypress and/or the physician providing services is out-of-network with the COP Plan members' health coverage, and (iii) inform COP Plan members that the actual charges for services may differ from the amount to be paid by the COP Plan members' health-care benefit plan.

## V.
## CLAIMS FOR RELIEF

### A.    First Cause of Action — Common Law Fraud

53.     ConocoPhillips realleges and incorporates by reference the foregoing paragraphs of the Counterclaim.

54.     North Cypress is liable to ConocoPhillips for common law fraud.  North Cypress submitted false and misleading claims for the purpose of recovering reimbursement from the COP Plan for charges that were not medically necessary and/or substantially in excess of the usual, customary and reasonable charges for such services, and thus were manifestly unconscionable and overreaching.  Nothing in the nature and circumstances of the services North Cypress rendered justifies its excessive charges.

55.     Specifically, as alleged herein, North Cypress submitted thousands of healthcare reimbursement claims to Aetna for outpatient and inpatient medical services and supplies provided to COP Plan members, which contained grossly inflated rates and falsely represented that such rates were reasonable and customary (when in fact they were not).  Additionally, as alleged herein, North Cypress operated an "Out of Network Emergency Room Based Strategy" pursuant to which North Cypress directly admitted all patients through the emergency room (even when the patients presented with non-emergent conditions). Thereafter, North Cypress submitted numerous healthcare reimbursement claims relating to COP Plan members, which contained excessive and grossly inflated charges for emergency-room services, falsely represented that such services were medically necessary (when in fact they were not), and falsely represented that such charges were reasonable and customary (when in fact they were not).  On information and belief, North Cypress continued to admit non-emergent COP Plan members through its emergency room after January 1, 2012 – the effective date of the COP Plan's amendment to exclude non-emergent medical services at North Cypress – in order to circumvent the COP Plan's amended coverage terms.

56.     Further, as alleged herein, and upon information and belief, North Cypress operated an "Observation" service strategy pursuant to which it held COP Plan members in an "observation" status for unreasonably long periods of time without either admitting or discharging the patients, and thereafter submitted healthcare reimbursement claims, which contained excessive and grossly inflated charges for "observation" services, falsely represented that such services were medically necessary (when in fact they were not), and falsely represented that such charges were reasonable and customary (when in fact they were not).

HOU:3546275.1

57.     In submitting healthcare claims for unnecessary and/or excessive charges (including but not limited to those for emergency room and observation services), North Cypress misrepresented and/or failed to disclose certain waivers, reassurances, or other promises made to induce the COP Plan members to use its facility, including reassurances that they would not pay more in coinsurance, deductibles or other patient-responsibility charges than they would at an in-network facility.  North Cypress also misrepresented its facility charges, because the claims it submitted for reimbursement were not claims for the amounts that the member actually agreed to pay, but for inflated amounts.

58.     In submitting healthcare claims for unnecessary and/or excessive charges (including but not limited to those for emergency room and observation services), North Cypress knew they were false or made them without regard to their truth or falsity.  Further, North Cypress calculated that, by reason of the circumstances of their submission and for other reasons, ConocoPhillips and/or Aetna would not discover at least some of them, thereby resulting in a substantial and unjustified windfall to North Cypress.

59.     In submitting healthcare claims for unnecessary and/or excessive charges, North Cypress intended that ConocoPhillips and/or Aetna rely on, among other things, the claim forms and representations contained therein in issuing reimbursement for the services billed. ConocoPhillips and/or Aetna reasonably relied on such representations and issued payments to North Cypress, unaware that concealed among the submitted claim forms were intentional overcharges, charges for services that should not have been separately billed, and overstated charges resulting from North Cypress' undisclosed waivers of co-insurance, deductibles or other charges.  The misrepresentations, and ConocoPhillips' and/or Aetna's reliance on them, directly and proximately caused Aetna to overpay hundreds (if not thousands) of healthcare claims, on

behalf of ConocoPhillips, in an amount to be determined at trial.  North Cypress benefited from the fraud and either made representations to ConocoPhillips and/or Aetna as alleged, or sat silently by and reaped the benefits of the fraud.

60.    ConocoPhillips seeks to recover its actual damages, consequential damages, incidental damages and costs incurred from the foregoing actions.

**B.    Second Cause of Action — Negligent Misrepresentation**

61.    ConocoPhillips realleges and incorporates by reference the foregoing paragraphs of the Counterclaim.

62.    In addition, or in the alternative, North Cypress is liable for negligent misrepresentation.  As alleged herein, North Cypress made material misrepresentations by (1) submitting false and misleading claims for reimbursement, which contained charges that were substantially in excess of the usual, customary and reasonable charges for the same or similar medical services in the relevant market, (2) submitting claims for facility charges that were in excess of the amounts that the patients actually agreed to pay, (3) submitting false and misleading claims for reimbursement of emergency room charges that were not medically necessary and/or substantially in excess of the usual, customary, and reasonable charges for such services, and (4) submitting false and misleading claims for reimbursement of "observation" charges that were not medically necessary and/or substantially in excess of the usual, customary and reasonable charges for such services.

63.    These misrepresentations were made in the course of North Cypress' business in which it had a pecuniary interest.  North Cypress supplied false information for the guidance of ConocoPhillips in its business.  North Cypress failed to exercise reasonable care or competence in communicating this information.  As a direct and proximate result of these negligent

misrepresentations, ConocoPhillips has suffered damages by overpaying thousands of healthcare claims in an amount to be determined at trial.

64.　　ConocoPhillips seeks to recover its actual damages, consequential damages, and costs incurred from North Cypress' actions.

**C.　　Third Cause of Action — Money Had and Received**

65.　　ConocoPhillips realleges and incorporates by reference the foregoing paragraphs of the Counterclaim.

66.　　In addition, or in the alternative, North Cypress is entitled to no more than a reasonable fee for the services provided.  North Cypress wrongfully billed for hospital services in an amount greatly in excess of the usual, customary and reasonable billed charges for the same services in the relevant market.  By routinely charging these excessive fees, North Cypress gouged ConocoPhillips and the COP Plan members.  On behalf of ConocoPhillips, Aetna has paid claims to North Cypress that it would not have paid but for North Cypress' wrongful conduct.  The excessive amounts that Aetna paid on behalf of ConocoPhillips should be returned to ConocoPhillips in equity and good conscience.  Accordingly, ConocoPhillips seeks the return of money had and received.

**D.　　Fourth Cause of Action — Unjust Enrichment**

67.　　ConocoPhillips realleges and incorporates by reference the foregoing paragraphs of the Counterclaim.

68.　　In addition, or in the alternative, North Cypress is liable under the principle of unjust enrichment.  North Cypress submitted inflated and unreasonable claims for payment without disclosing that it had entered into waiver agreements with the COP Plan members and/or the amount that North Cypress waived.  Moreover, North Cypress wrongfully billed for hospital services in an amount greatly in excess of the usual, customary and reasonable billed charges for

-23-

the same services in the relevant market.  On behalf of ConocoPhillips, Aetna paid North Cypress based on its claims for these excessive and unreasonable charges.  Allowing North Cypress to retain the fees paid for services allegedly rendered to the COP Plan members — to which North Cypress was not entitled — would unjustly enrich North Cypress.

69.     ConocoPhillips seeks to recover the actual damages, consequential damages, incidental damages, and costs incurred from these actions.

**E.     Fifth Cause of Action — Tortious Interference with the COP Plan**

70.     ConocoPhillips realleges and incorporates by reference the foregoing paragraphs of the Counterclaim.

71.     In addition, or in the alternative, North Cypress is liable for tortious interference of the COP Plan.  The COP Plan is a contract, the terms of which govern the co-pay, deductible, coinsurance and other portions of a hospital's charges for services for which the member or beneficiary is contractually obligated to pay.  These and other plan terms encourage members and beneficiaries to make responsible and cost effective health care decisions.

72.     North Cypress knew or had reason to know of the COP Plan, and that such Plan required the collection of applicable patient responsibility for out-of-network benefits.  North Cypress, however, took numerous overt steps aimed at avoiding the patient-responsibility requirements for out-of-network benefits, including, but not limited to, designing and implementing a "prompt pay discount" policy to be used only for select patients, like the COP Plan members.

73.     North Cypress willfully and intentionally interfered with the COP Plan by waiving the members' co-pays, coinsurance, and/or deductibles.  In doing so, North Cypress caused the COP Plan members to receive healthcare benefits for which they did not pay their contractual share of financial responsibility.

-24-

74.     North Cypress' acts and omissions induced the COP Plan members to receive treatment at North Cypress (an out-of-network facility) rather than available in-network facilities, thereby proximately causing injury to ConocoPhillips, which resulted in actual damages or loss in an amount to be determined at trial.

75.     In addition to actual damages, ConocoPhillips seeks the recovery of consequential damages, incidental damages and costs incurred from the foregoing actions.

**F.      Sixth Cause of Action — Breach of Contract**

76.     ConocoPhillips realleges and incorporates by reference the foregoing paragraphs of the Counterclaim.

77.     In addition, or in the alternative, North Cypress is liable for breach of contract. On or about September 15, 2010, North Cypress entered into a valid Participating Facility Agreement with MultiPlan, Inc. pursuant to which North Cypress obtained the right to, and began participating in, Aetna's National Advantage Program, which provides plan sponsors and members (including ConocoPhillips and the COP Plan members) access to contracted rates for healthcare services performed by out-of-network providers like North Cypress, who are not directly contracted with Aetna as an in-network provider.

78.     Under the Participating Facility Agreement, ConocoPhillips is a third party beneficiary because North Cypress and MultiPlan Inc. entered in the agreement with the express intention of benefiting ConocoPhillips and because the agreement was entered into directly and primarily for ConocoPhillips' benefit.

79.     Under the Participating Facility Agreement, North Cypress was required to bill and collect from patients all applicable patient financial responsibility for out-of-network services as specified in the patients' healthcare benefit plans, including the COP Plan.  By waiving or reducing patient financial responsibility, or otherwise collecting only the in-network

amount of patient responsibility, North Cypress breached its Participating Facility Agreement with MultiPlan, Inc., thereby causing injury to ConocoPhillips, which resulted in actual damages or loss in an amount to be determined at trial.

80.     In addition to actual damages, ConocoPhillips seeks the recovery of consequential damages, incidental damages and costs incurred from the foregoing actions.

## G.     Seventh Cause of Action — Injunctive Relief

81.     ConocoPhillips realleges and incorporates by reference the foregoing paragraphs of the Counterclaim.

82.     North Cypress is engaging in practices that violate Texas statutory laws and other applicable standards of conduct concerning the billing practices of medical providers and the disclosure of material information to patients.

83.     ConocoPhillips seeks injunctive relief that North Cypress cease and desist these unlawful practices.  Specifically, ConocoPhillips requests that North Cypress be enjoined from (1) submitting claims for reimbursement for medical services rendered to COP Plan members that exceed the usual, customary and reasonable fees for similar services provided at hospitals in the Houston market, and (2) waiving, reassuring or making other promises to induce the COP Plan members to use their facilities, including reassurances that they would not pay more in coinsurance, deductibles or other patient-responsibility charges than they would at an in-network facility.

84.     ConocoPhillips also requests that the Court require North Cypress to fully notify and apprise all COP Plan members, when their referring physicians have an ownership interest in North Cypress' facility.

**H.      Eighth Cause of Action — Declaratory Judgment**

85.      ConocoPhillips realleges and incorporates by reference the foregoing paragraphs of the Counterclaim.

86.      An actual, justifiable controversy exists between ConocoPhillips and North Cypress concerning North Cypress' improper billing practices described herein, including its violation of Texas statutory laws regarding same.  Pursuant to 28 U.S.C. § 2201, ConocoPhillips seeks a declaratory judgment that (1) North Cypress has violated Texas statutory laws concerning the billing of medical treatment and services provided to COP Plan members, (2) North Cypress violated Texas statutory law regarding the waiver of patients' financial responsibility in accepting an assignment of benefits and did not disclose waivers, reassurances, or other promises made to induce patients to use its facility, including reassurances that they would not pay more in coinsurance, deductibles, or other patient-responsibility charges than they would at an in-network facility, and (3) ConocoPhillips is entitled to recoup all overpayments paid to North Cypress on the excessive charges made on medical claims submitted for the treatment of the COP Plan members.

## VI.
## EXEMPLARY DAMAGES

87.      ConocoPhillips realleges and incorporates by reference the foregoing paragraphs of the Counterclaim.

88.      North Cypress' conduct was fraudulent, malicious and resulted in harm to ConocoPhillips.  As a consequence, ConocoPhillips is entitled to recover exemplary damages.

## VII.
## EQUITABLE RELIEF (ERISA)

89.      ConocoPhillips realleges and incorporates by reference the foregoing paragraphs of the Counterclaim.

HOU:3546275.1

90.     In the alternative, the COP Plan is an ERISA plan and ConocoPhillips is an ERISA fiduciary.  ConocoPhillips contends its state law claims may be pursued because they do not relate to ERISA and are not preempted.

91.     To the extent that North Cypress' entitlement to be paid arises pursuant to the COP Plan members' assignments to it, North Cypress stands in the shoes of an ERISA beneficiary.

92.     North Cypress is in actual or constructive possession and control over specifically identifiable funds that belong in good conscience to the COP Plan.

93.     As authorized by 29 U.S.C. § 1132(a)(3), ConocoPhillips therefore seeks against North Cypress all relief that was typically available in equity.

94.     Without limitation, ConocoPhillips seeks (i) a constructive trust over the fees that North Cypress improperly demanded and received, (ii) an order permanently enjoining North Cypress from disposing of or transferring any of the funds still in its possession and control, (iii) an order requiring the return of such funds and a tracing of any portion of the funds no longer in North Cypress' possession or control, and (iv) a constructive trust over any such funds in the possession or control of North Cypress as a result of the fraudulent conduct specified herein.

## VIII.
## ATTORNEYS' FEES

95.     ConocoPhillips realleges and incorporates by reference the foregoing paragraphs of the Counterclaim.

96.     ConocoPhillips seeks to recover its reasonable and necessary attorneys' fees and costs incurred in connection with prosecuting this action under, without limitation, TEX. CIV. PRAC. & REM. CODE § 38.001, and 29 U.S.C. § 1132(g)(1).

## IX.
## CONDITIONS PRECEDENT

97.     ConocoPhillips has performed all conditions precedent, or they have otherwise been waived.

## X.
## JURY DEMAND

98.     ConocoPhillips demands a trial of this action by jury on all issues.

## XI.
## PRAYER

Counter-Plaintiffs ConocoPhillips Company and ConocoPhillips Medical and Dental Assistance Plan respectfully request that on final trial hereof, they have judgment against Counter-Defendants North Cypress Medical Center Operating Company, Ltd. and North Cypress Medical Center Operating GP, LLC, jointly and severally, for the following:

   a.     An award of both actual damages and consequential damages;

   b.     An award of exemplary damages;

   c.     Equitable relief as requested above;

   d.     Declaratory and injunctive relief as requested above;

   e.     Reasonable and necessary attorneys' fees;

   f.     Costs of court;

   g.     Prejudgment and post-judgment interest; and

   h.     Such other and further relief at law or in equity to which ConocoPhillips may be justly entitled.

Respectfully submitted

By:  */s/ John B. Shely*
         JOHN B. SHELY
         State Bar No. 18215300
         *jshely@andrewskurth.com*
         600 Travis, Suite 4200
         Houston, Texas 77002
         (713) 220-4200
OF COUNSEL:                              (713) 220-4285 – Fax

ANDREWS KURTH LLP                  ATTORNEY-IN-CHARGE FOR COUNTER-
and                                              PLAINTIFFS CONOCOPHILLIPS
JEFFREY D. MIGIT                         COMPANY AND CONOCOPHILLIPS
State Bar No. 00794306                  MEDICAL AND DENTAL ASSISTANCE
*jmigit@andrewskurth.com*            PLAN

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of July, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.  The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who are known "Filing Users:"

J. Douglas Sutter
Kelly, Sutter & Kendrick
3050 Post Oak Blvd., Suite 200
Houston, Texas 77056-6570


                    */s/ Jeffrey D. Migit*
                         Jeffrey D. Migit

HOU:3546275.1